UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JERMAINE A. WILLIAMS,           :      Civil Action No. 09-1822 (DRD)
                                :
              Petitioner,       :
                                :
       v.                       :
                                :
MICHELLE R. RICCI, et al.,      :          **MEMORANDUM  OPINION**
                                :              **AND ORDER**
              Respondents.      :
                                :

1.   This matter was initiated upon Petitioner's filing of a <u>pro se</u> petition seeking habeas relief, pursuant to 28 U.S.C. § 2254.  <u>See</u> Docket Entry No. 1.  However, shortly after initiation of this action, Petitioner filed an application seeking stay of the instant matter for the period needed to exhaust certain Petitioner's claims in the state courts. <u>See</u> Docket Entry No. 4.

2.   In light of Petitioner's application, the Court issued an order and accompanying opinion granting Petitioner stay. <u>See</u> Docket Entries Nos. 5 and 6.

3.   Upon the Court's issuance of the order staying the instant matter, the Clerk administratively terminated this action, subject to reopening in the event Petitioner files his amended § 2254 petition upon conclusion of exhaustion of Petitioner's claims in the state courts.

4.   However, shortly thereafter, Petitioner filed a motion notifying the Court that: (a) Petitioner changed his mind

about exhausting his unexhausted claims and wished to forfeit them; and (b) he elected to seek habeas relief solely on the grounds of his exhausted claims. See Docket Entry No. 8. Petitioner, therefore, requested reopening of this matter. See id.

5. In light of the foregoing, the Court ordered the Clerk to reopen this matter and: (a) directed Petitioner to submit an amended petition stating only the claims Petitioner sought to litigate in this action; and (b) provided Petitioner with notice, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). See Docket Entry No. 11.

6. Petitioner responded by filing his amended petition, see Docket Entry No. 13, which was shortly followed by Petitioner's brief submitted in support of his amended petition and elaborating of the finer details of his claims. See Docket Entry No. 14. Petitioner's brief, a sixty-one-page document, indicated that Petitioner raised four umbrella grounds, with the fourth ground consisting of the "a" to "o" claims, i.e., of fifteen sub-grounds. See id.

7. The Court, therefore, directed Respondents to answer the amended petition. See Docket Entry No. 15. The Court's order to answer included, inter alia, the following directive:

> IT IS . . . ORDERED that Respondents' answer shall address the allegations of the Amended Petition by

2

each paragraph and subparagraph, . . . and it is
further . . . ORDERED that Respondents shall
attach to the answer parts of the transcript that
the Respondents consider relevant and . . . any
brief that Petitioner submitted . . . contesting
the conviction or sentence, [and] any brief that
the prosecution submitted . . . relating to the
conviction or sentence[,] and . . . the opinions
and dispositive orders [of the state courts]; and
it is further . . . ORDERED that the answer shall
contain an **index of exhibits expressly correlating
each exhibit to a particular docket entry or to
particular pages of attachments, thus enabling
swift location of each exhibit on the docket** . . .

Id. at 1-3 (emphasis supplied).

8.    In response to the Court's directive, Respondents filed

their answer, see Docket Entry No. 19, and their exhibits to

the answer.  See Docket Entry No. 20.

9.    Respondents' exhibits consisted of 1460 pages, see Docket

Entries Nos. 20, 20-1, 20-2, 20-3, 20-4, 20-5, 20-6, 20-7,

20-8, 20-9, 20-10, 20-11, 20-12, 20-13, 20-14, 20-15 and 20-

16, and included, as the first two pages of Docket Entry No.

20, a list of Respondents' exhibits presumably composing

this 1460-page compilation.  See Docket Entry No. 20, at 1-

2.  The list, seemingly aiming to operate as Respondents'

"index," omitted to include any explanations as to where,

among these 1460 pages, any of the exhibits noted in the

list could be located, hence leaving the Court with the task

of reading 1460 pages of documents and correlating these

3

documents to the list provided by Respondents.[1]  See id.
Moreover, omitted from the list (and, presumably, from the
compilation) were left such essentials as the decisions of
the Superior Court of New Jersey, Appellate Division, with
regard to Petitioner's direct appeal and post-conviction
relief challenges.  See id., see also, generally Docket

---

[1] In complete disregard to the Court's directive to
"expressly correlat[e] each exhibit to a particular docket entry
or to particular pages of attachments, thus enabling swift
location of each exhibit on the docket," Respondents designated
their seventeen docket entries as follows: (a) the 91-page Docket
Entry No. 20 was left literally nameless; (b) the 129-page Docket
Entry No. 20-1 was identified as "Brief Various," leaving it to
the Court's imagination as to what exactly this phrase was meant
to refer to; (c) the 137-page-long and 180-page-long Docket
Entries Nos. 20-2 and 20-3 were both identified with the same
lack of clarity as "Exhibit Various Documents"; (d) the 84-page
Docket Entry No. 20-4 was named "Exhibit Transcript 9T Part Two,"
without explaining what "9T" meant; (e) the 168-page Docket Entry
No. 20-5 was identified as "Exhibit Transcript 10T," also without
any explanation; (f) the 124-page Docket Entry No. 6 was
designated as "Exhibit Transcript 8T," again without any
explanation; (g) the 120-page Docket Entry No. 7 was identified
as "Exhibit Transcript 9T Part One," without explaining what this
designation meant but suggesting that it was an exhibit preceding
the one docketed as Docket Entry No. 20-4; and (h) the remaining
434 pages of Docket Entries Nos. 8 to 16 (ranging in their volume
from 32 to 73 pages each) were all designated identically, i.e.,
merely as "Exhibit."  The Court takes this opportunity to note
its grave concern with Respondents' failure to comply with the
Court's unambiguous order mandating clear designations enabling
the Court to swiftly locate each document, especially the
documents referred to in Respondents' answer.  In connection with
this observation, the Court notes that the Court's determination
as to the merits of Petitioner's amended petition will be made
only after the Court fully examines and satisfies itself as to
the underlying record: acting otherwise would be equivalent to a
violation of this Court's judicial mandate and ethical
obligations.  The Court stresses that it takes its obligations in
this and every action seriously, and so should Respondents.

Entries Nos. 20 and 20-1 to 20-16.  Furthermore, this
Court's attempts to determine the content of Respondents'
exhibits revealed that some documents included in
Respondents' list were replicated only in part, being cut-
off seemingly half-way, while others, enigmatically enough,
were replicated twice, hence unnecessarily increasing the
thickets of Respondents' already voluminous exhibits.
Compare Docket Entry No. 20-2, at 105-36 (replicating the
thirty-page decision reached, during Petitioner's post-
conviction relief proceedings, by the Superior Court of New
Jersey, Law Division), to Docket Entry No. 20-3, at 21-51
(replicating the very same).

10.  The content and/or format of Respondents' answer is even
more problematic.  Respondents' mere nineteen-page response
to Petitioner's three umbrella grounds and the fourth ground
incorporating fifteen sub-grounds, asserted, inter alia,
that:

   a.   Petitioner's claim that he was excluded from the voir
        dire part of his criminal trial raised an issues not
        amenable to habeas relief because, in Respondents'
        opinion, these challenges presented a state law claim
        and a criminal defendant had no constitutional right to

peremptory challenges.[2]  See Docket Entry No. 19, at 5-6;

b.   since the Superior Court of New Jersey, Appellate Division, dismissed Petitioner's second ground on the merits and, in the alternative, as procedurally defaulted, this Court shall deny Petitioner habeas relief on the basis of, inter alia, procedural default.[3]  Respondents' procedural default argument is wholly misplaced.  As one court recently explained:

---

[2]  Since the issues related to Petitioner's first ground raising voir dire challenges underlies this Court's decision to appoint counsel to Petitioner for the limited purposes of resolving this issue only, the Court's detailed discussion of the legal regime governing this issue is provided infra.

[3]  Since, according to Respondents' "index," Respondents' exhibits did not include any replication of the Appellate Division's decisions, Respondents effectively invited this Court either to take Respondents' conclusory statements as true or to conduct its own research and assemble the record that Respondents were obligated to conduct and assemble.  Moreover, in disregard of this Court's express directive to make references to the exhibits as docketed in this matter, i.e., by the docket entries made in this action and the pages within such docket entries, Respondents referred the Court's attention to such designations as "Pca15" and "Pca16," leaving the Court to guess what these "Pca" digits meant and how to locate them among the 1460 pages of Respondents' exhibits.  In addition, for the reasons not entirely clear to the Court, Respondents utilized, while citing to the United States Reports, lengthy parallel citations to the Supreme Court Reporter and Lawyer's Edition (wholly unnecessary under the Bluebook Uniform System of Citation invariably employed by the federal courts), thus wasting the already-few pages of their answer on these content-free-space-consuming lines, and even distorted the format of these citations by omitting the spaces in the abbreviations "S. Ct." and "L. Ed."  See Docket Entry No. 19, at 7-10; compare Bluebook, A Uniform System of Citation, Table 1.

> The record indicates that Petitioner
> challenged [a certain issue] on direct appeal
> and — having that challenge dismissed on
> merits — tried, nonetheless, to re-raise the
> same during his PCR proceedings . . . .
> Since the challenge was substantively
> resolved during direct appellate review, it
> is hardly surprising that Petitioner's [PCR]
> claim was dismissed by the state courts on
> procedural grounds during Petitioner's PCR
> proceedings.  From the fact of such PCR
> dismissal, Respondents now deduce that
> Petitioner's challenges must be procedurally
> barred for the purposes of *this Court's*
> habeas review.  . . . [However,] once a
> litigant fully exhausts a claim in state
> courts *on the merits*, that claim cannot be
> procedurally defaulted for the purposes of
> federal habeas review, this is so regardless
> of whether or not it was . . . procedurally
> dismissed . . . during later rounds of state
> proceedings. Therefore, Respondents'
> procedural default defense is facially
> inapposite to the case at bar and, hence,
> will not be entertained.

Mustaffa v. Ricci, 2011 U.S. Dist. LEXIS 44940, at *8-9

(D.N.J. Apr. 25, 2011) (emphasis in original).  The

same logic applies here.  Since, according to

Respondents' answer, the Appellate Division did dismiss

Petitioner's challenges on *the merits* (and,

*alternatively*, as procedurally defaulted), Respondents'

procedural default argument is facially inapposite to

the case at bar simply because the state court's

determination on the merits was entered.  Accord

Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993)

("exhaustion is [presumed] not possible [only if] the

state court . . . find[s] the claims procedurally
defaulted" and a state court review on the merits is
found wholly unavailable); cf. Coleman v. Thompson, 501
U.S. 722, 730-32 & n.1 (1991); Harris v. Reed, 489 U.S.
255 (1989); and

c.   habeas relief should be denied as to Petitioner's third
and fourth grounds.

  i.   In connection with their argument against
       Petitioner's third ground, Respondents again made
       references to undocketed Appellate Division's
       decision and also referred to Petitioner's
       statements in the record, to which Respondents
       provided this Court with no citations to the
       docket entries made in this case and, in fact,
       with no citations to any documents whatsoever,
       except for two references to mysterious "Pca13"
       and "Pca14," and a "half-quotation" statement
       garnished with the closing quotation mark but with
       no opening one, and with no citation to accompany
       this alleged quote.  See Docket Entry No. 19, at
       13-14.

 ii.   Addressing Petitioner's fourth ground, consisting
       of *fifteen* separate sub-grounds, Respondents
       graced these Petitioner's challenges with mere

four pages of response, see Docket Entry No. 19,
at 16-19, one and a half of which were dedicated
to Respondents' elaboration on the standard long
established in Strickland v. Washington, 466 U.S.
668 (1984). See Docket Entry No. 19, at 16-17.
Not surprisingly, this mode of argument left
Respondents with merely two- or three-sentence
responses to each Petitioner's sub-ground; as the
rest of Respondents' answer, these responses
contained no citation references either to the
record or to the pertinent case law. For
instance, addressing two of such Petitioner's sub-
grounds, Respondents merely stated:

> The petitioner's claim regarding the
> testimony of Jahkeam Francis, that the
> testimony showed the petitioner had some
> sort of fetish for gold chains, is
> illogical. The respondents submit no
> such inference can be drawn. His claim
> regarding the alleged inconsistent
> statements of Francis also make no
> sense. The petitioner does not even
> explain how the testimony was
> inconsistent. Similarly, the petitioner
> fails to explain what the inconsistency
> is in Justiniano's testimony, how trial
> defense counsel failed to meet his
> professional responsibilities, and how
> the outcome of the trial was altered by
> admission of the questioned testimony.
> Accordingly, this contention too is
> devoid of any merit whatsoever.

Id. at 19.

9

At no point does Respondents' answer explain who
were Francis and Justiniano and what they
testified to.  Moreover, Respondents ignored
Petitioner's brief which, contrary to Respondents'
assertion, detailed the alleged inconsistencies
and the bases for Petitioner's position that his
rights were violated.[4]  See Docket Entry No. 14,
at 54-58.  In sum, the quality of Petitioner's
answer effectively left this Court with the task
to act as counsel for Respondents, determining the
factual predicate and legal reasoning in support
of Respondents' self-serving bold conclusions that
Petitioner's position "made no sense."  This,
however, the Court cannot do.  See 28 U.S.C. §
455(a) ("any justice, judge or magistrate [judge]
of the United States shall disqualify himself in
any proceeding in which his impartiality might
reasonably be questioned");  Liljeberg v. Health

---

[4] While Petitioner's position might, eventually, be
determined to be not warranting habeas relief, the possibility of
such development does not mean that Petitioner did not state his
position or did not direct Respondents and this Court's attention
to the statements he found inconsistent or violating his rights.
All that Respondents had to do was to read his brief carefully
and, instead of resorting to such unbecoming-to-attorney self-
serving lines as "claims make no sense" or "this contention is
devoid of any merit whatsoever," address Petitioner's challenges
under either or both prongs of Strickland and cite judicial
decisions reached with regard to analogous factual predicates.

Services Acquisition Corp., 486 U.S. 847, 860
(1988); In re Kensington Intern. Ltd., 368 F.3d
289, 301 (3d Cir. 2004); see also U.S. v. Jordan,
49 F.3d 152, 156 (5th Cir. 1995) (the court must
consider how the facts would appear to a
"well-informed, thoughtful and objective
observer").

11. In light of the aforesaid shortcomings, Respondents will be
directed to submit, anew: (a) an index of Respondents'
exhibits, in which each document will be designated under
its actual title and correlated to a particular docket entry
(and, where applicable, to the pages within that docket
entry) made in *this action*; (b) a paragraph-by-paragraph
answer to Petitioner's amended petition; (c) a thoughtful,
carefully drafted brief addressing the facts and law of each
of Petitioner's challenges (as reflected in Petitioner's
brief, Docket Entry No. 14, and further elaborated upon in
Petitioner's traverse, Docket Entry No. 22), providing the
Court with Respondents' counter-statement of pertinent facts
and detailed discussion of law and factual predicate with
regard to each Petitioner ground and sub-ground, while
treating each sub-ground as an individual and independent
ground; and (d) Respondents' exhibits in support of their
references made in the new answer or its accompanying legal

11

brief, e.g., the decision reached by the Appellate Division during Petitioner's post-conviction relief proceedings.[5] Petitioner will be availed of an opportunity to submit a traverse to Respondents' new answer and their legal brief.[6]

12. The aforesaid opportunities to submit a superceding answer/legal brief and traverse will be granted, however,

---

[5]   Such new answer shall: (a) raise solely the positions that are not facially inapposite to the facts of this case; (b) utilize proper Bluebooked citations to all legal sources; and (c) provide clear citations to the docket entries (and pages within these docket entries) as to all and each referred-to-in-Respondents'-brief factual allegations based on the statements that were made by Petitioner, or the witnesses who testified at his criminal proceedings and/or made relevant statements to the police that were admitted into evidence, or the prosecutor and defense counsel, or the trial judge, the Law Division during Petitioner's post-conviction relief proceedings, etc. Respondents' new answer and accompanying brief will be deemed superceding Respondents' original answer docketed as Docket Entry No. 19. No statement made in Docket Entry No. 19 will be considered by this Court beyond the point of issuance of this Memorandum Opinion and Order. Respondents may utilize their exhibits docketed as Docket Entries Nos. 20 and 20-1 to 20-16, provided that Respondents: (a) include an index explaining to the Court in what docket entry (and at what page of each docket entry) each document can be located; *and* (b) utilize the same mode of referencing (*i.e.*, to the docket entries in this matter and pages within these docket entries) for the purposes of making their arguments in their new answer and accompanying legal brief.

[6]   Petitioner may, but need not file his traverse to Respondents new answer and accompanying brief. In the event Petitioner elects not to file a traverse, this Court will consider Petitioner's arguments stated in his currently filed traverse, Docket Entry No. 22, when the Court rules on Petitioner's amended petition in light of Respondents' position asserted in Respondents' new answer and supporting brief. In the event Petitioner elects to file a new traverse, replying to Respondents' new answer and brief, this Court will consider only the statements made in Petitioner's superceding traverse.

solely with regard to Petitioner's second, third and fourth
grounds (including each sub-ground of the fourth ground),
since Petitioner's first ground warrants a separate
discussion and distinct treatment.

13. While this Court was trying to find its way through the
thickets of Respondents' exhibits docketed as Docket Entries
Nos. 20 and 20-1 to 20-16, and to follow the logic of
Respondents' argument raised in the answer docketed as
Docket Entry No. 19, Petitioner submitted his traverse to
Respondents' answer. See Docket Entry No. 22.  The
traverse, a 45-page compilation consisting of Petitioner's
factual and legal arguments, and a few exhibits, reflected,
inter alia, Petitioner's position as to his first ground.

14. As noted supra, that first ground alleged that Petitioner
was excluded from his voir dire proceedings, while
Respondents asserted that Petitioner's first ground could
not merit habeas relief because it raised a state law claim
and because Petitioner had no constitutional right to
peremptory challenges.  Respondents' position is equally
divorced from the gist of Petitioner's challenges and from
the governing legal regime.

15. The Supreme Court observed that, although many of the modern
cases involving the constitutional right to presence are
rooted in the Confrontation Clause of the Sixth Amendment,

the right is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam). The Gagnon Court explained that a defendant has a constitutional right to be present at all trial-related proceedings "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Id. at 526 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1938)).  Although the Court emphasized that this right was not guaranteed "when presence would be useless, or the benefit but a shadow," Snyder, 291 U.S. at 106-107, due process clearly guarantees that the defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence." Id. at 108; see also Gagnon, 470 U.S. at 526; Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"); Faretta v. California, 422 U.S. 806, 819 n.15 (1975) (defendant "has a constitutional right to be present at all stages of the trial when his absence might frustrate the fairness of the proceedings").

14

16.  Federal Rule of Criminal Procedure 43 built on the foregoing
     by giving a federal defendant an explicit right to be
     present "at every stage of the trial including the
     impaneling of the jury." Fed. R. Crim. P. 43(a).  As
     originally promulgated, Rule 43 was intended to be "a
     restatement of existing law."  Fed. R. Crim. P. 43, 1946
     Advisory Committee Notes ¶ 1; see also 8B Moore's Federal
     Practice ¶ 43.01[2].  This is so because Rule 43(a) derived,
     in part, from two early Supreme Court cases, Lewis v. United
     States, 146 U.S. 370 (1982), and Diaz v. United States, 223
     U.S. 442 (1912).  In Lewis, the Court reversed the
     conviction of a defendant who had not seen the jurors until
     after the challenges had been made and the jurors selected,
     holding that the "making of challenges was an essential part
     of the trial," and that it was one of "the substantial
     rights of the prisoner to be brought face to face with
     jurors at the time when the challenges were made."  146 U.S.
     at 376.  In what has become an oft-quoted passage, the Court
     stated: "A leading principle that pervades the entire law of
     criminal procedure is that, after indictment found, nothing
     shall be done in the absence of the prisoner."  Id. at 372.
     In Diaz, the Court ruled that a defendant not in custody
     could waive his right to be present during trial, defining
     the right in broad language:

15

> In cases of felony, our courts, with substantial
> accord, have regarded [the defendant's right to be
> present] as extending to every stage of the trial,
> inclusive of the impaneling of the jury and the
> reception of the verdict, and as being scarcely
> less important to the accused than the right of
> trial itself.

223 U.S. at 455.  Thus, Rule 43 embodies the protections

afforded by the Sixth Amendment Confrontation Clause, the

due process guarantee of the Fifth and Fourteenth

Amendments, and the common law right of presence.  See

United States v. Washington, 705 F.2d 489, 497 (D.C. Cir.

1983).  Consequently, Rule 43 has traditionally been

understood to codify both a defendant's constitutional right

and his common law right to presence, and the Rule's

"protective scope" was deemed broader than the

constitutional rights alone.  See id. at 497-98 n.5; see

also United States v. Alessandrello, 637 F.2d 131, 139 (3d

Cir. 1980), cert. denied, 451 U.S. 949 (1981); United States

v. Brown, 571 F.2d 980, 986 & n.5 (6th Cir. 1978).  Rule

43(a), for example, mandates the defendant's presence at

certain stages of trial when defendant's presence would not

be constitutionally required.  See Gagnon, 470 U.S. 522

(holding that defendant's presence at in camera hearing

between judge, juror, and lawyer, *while not constitutionally

required*, was nevertheless a "stage of the trial" at which

defendant's right to presence was guaranteed by Rule 43).

17.  The constitutional right to be present at voir dire grows

out of the fact that the defendant's presence at jury

selection had a "'reasonably substantial'" relation to his

"'opportunity to defend against the charge.'"  Gagnon, 470

U.S. at 526; Snyder, 291 U.S. at 105-06.  The defendant's

presence at voir dire is substantially related to his

defense because he has an opportunity "to give advice or

suggestion[s] . . . to . . . his lawyers."  Snyder, 291 U.S.

at 106.  During voir dire, for example, "what may be

irrelevant when heard or seen by [defendant's] lawyer may

tap a memory or association of the defendant's which in turn

may be of some use to his defense."  Boone v. United States,

483 A.2d 1135, 1137-38 (D.C. App. 1984); see also United

States v. Washington, 705 F.2d 489, 497 (D.C. App. 1983).  A

defendant's presence at jury selection is also necessary so

that he may effectively exercise his peremptory challenges.

See Washington, 705 F.2d at 497.  The process of peremptory

challenges is essential to an impartial trial.  See Lewis v.

United States, 146 U.S. at 378.  As Blackstone pointed out,

"how necessary it is that a prisoner . . . should have a

good opinion of his jury the want of which might totally

disconcert him; the law wills not that he should be tried by

any one man against whom he has conceived a prejudice even

without being able to assign a reason for his dislike."  4 W.

17

Blackstone, <u>Commentaries</u> at 353, <u>quoted</u> <u>in</u>, <u>Lewis</u>, 146 U.S. at 376; <u>see</u> <u>also</u> <u>Alessandrello</u>, 637 F.2d at 151; <u>see</u> <u>also</u> <u>Crutcher</u>, 405 F.2d at 244 (defendant may form distinct impressions and prejudices "conceived upon the bare looks and gestures" of proposed jury members).  Hence, there is no doubt that Petitioner had constitutionally-based rights to be present during his <u>voir</u> <u>dire</u>.

18.  Although a criminal defendant has constitutionally-based rights to be present at jury selection, these rights may of course be waived.  <u>See</u> <u>United States v. Crutcher</u>, 405 F.2d 239, 243 (2d Cir. 1968), <u>cert.</u> <u>denied</u>, 394 U.S. 908 (1969) ("the right to be present at one's trial is a personal right that may be waived by a defendant").  In <u>Cross v. United States</u>, 325 F.2d 629 (D.C. Cir. 1963), defense counsel advised the trial judge in mid-trial that defendant, who was in custody and seated in a room adjacent to the courtroom, had declined to return to the trial.  Without further inquiry, the court ordered the trial to "proceed with the defendant in absentia" determining that counsel's representation was a sufficient basis for finding waiver. On appeal, however, it was held that "at least an on-the-record statement in open court by the defendant himself" is required before he can waive his right to presence at trial.  <u>See</u> <u>Cross</u>, 325 F.2d at 633.  The same

18

rationale was employed for the purposes of the defendant's waiver of his right to be present during voir dire. The on-the-record waiver in the voir dire scenario is expected because defendant's presence at voir dire is essential - not only because it is necessary to the appearance of impartiality but also -

> because the defendant has unique knowledge which is important at all stages of the trial, including the voir dire. At the voir dire he may, for example, identify prospective jurors that he knows. He may also have knowledge of facts about himself or the alleged crime which may not have seemed relevant to him in the tranquility of his lawyer's office, and thus may not have been disclosed, but which may become important as the individual prejudices or inclinations of the jurors are revealed. He may also be a member of the community in which he will be tried and might be sensible to particular local prejudices his lawyer does not know about.

United States v. Gordon, 829 F.2d 119, 125 (1987) (finding that an on-the-record statement in open court by the defendant himself is required to waive the defendant's right to be present at voir dire and quoting Alessandrello, 637 F.2d at 151). "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' . . . This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the

accused." <u>Cross</u>, 325 F.2d at 631 (quoting <u>Johnson v.
Zerbst</u>, 304 U.S. 458, 464-65 (1938)).  Where the defendant
is in custody, "'the serious and weighty responsibility' of
determining whether he wants to waive a constitutional right
requires that he be brought before the court, advised of
that right, and then permitted to make 'an intelligent and
competent waiver.'"[7]  <u>Id.</u>

19.  In <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), the Supreme
Court enunciated two separate categories of constitutional
error for federal courts considering habeas corpus
petitions.  The first type is "trial error."  According to
the <u>Brecht</u> Court, trial error "occurs during the
presentation of the case to the jury," and is amenable to
harmless-error analysis because it "may . . . be
quantitatively assessed in the context of other evidence

---

[7]  In <u>Gagnon</u>, for example, the United States Supreme Court
ruled that the defendant's failure to invoke his right to be
present at an <u>in camera</u> meeting held by the judge to determine
whether an individual juror had been tainted constituted a valid
waiver of that right.  <u>See</u> 470 U.S. at 529.7  Defendant's counsel
was present at that meeting.  The <u>Gagnon</u> Court concluded that
defendant had waived his right to be present through his failure
to assert a right to attend, to lodge any type of objection, or
to make a post-trial motion.  The Court reasoned that a district
court "need not get an express 'on the record' waiver from the
defendant for every trial conference which a defendant may have a
right to attend."  <u>Id.</u> at 528.  However, the Court considered the
<u>in camera</u> conference to be a "relatively minor incident" in the
trial.  <u>Id.</u> at 529.  The jury selection process, on the other
hand, is integral in the defendant's Sixth Amendment right to
trial by an impartial jury, and thus cannot be considered minor.

presented in order to determine [the effect it had on the trial]." Id. at 1717 (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)).  For these "trial errors," the Brecht Court instructed that the Kotteakos standard, focusing on whether the error "had substantial and injurious effect or influence in determining the jury's verdict" was to replace the Chapman standard, which looked to whether the state court's error was "harmless beyond a reasonable doubt." Brecht, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  The second category of errors, "structural errors," lie "at the other end of the spectrum of constitutional errors" from trial errors.  See id. at 629-30.  These "structural errors" are errors "in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," id. (quoting Fulminante, 499 U.S. at 309), and hence, they require automatic reversal.  Although a violation of defendant's right to be present at the bench during individual voir dire does not fall neatly into either end of the Brecht Court's spectrum, See Cardinal v. Gorczyk, 880 F. Supp. 261 (D. Vt. 1995), rev'd on other ground, 81 F.3d 18 (2d Cir. 1996), the courts concluded that the Kotteakos standard is still the test to be applied to the absence-from-voir-dire challenges. See id.; see also Alessandrello, 637 F.2d 131.

20. While the determinations made in each case turns on the
unique facts presented by that case, typically those cases
where the defendant was absent during a relatively small,
substantively minor, portion of voir dire have found
harmless error.  See, e.g., United States v. Willis, 759
F.2d 1486, 1500 (11th Cir. 1985) (defendants' absence for
individual questioning of venirepersons concerning pretrial
publicity was harmless error where lawyers explored effect
of pretrial publicity during four hour individual voir dire,
took recess to consider how to exercise peremptory strikes
and exercised those strikes in open court), cert. denied,
474 U.S. 849 (1985); Washington, 705 F.2d at 496 (court's
denial of defendant's request to participate in individual
voir dire of thirteen venirepersons to discuss prior
involvement with criminal justice system was a harmless
error since: (a) the defendant remained present in
courtroom, (b) only a very limited portion of voir dire was
conducted at bench, and (c) the defendant was permitted to
confer with counsel regarding jurors' responses at the
bench); Alessandrello, 637 F.2d at 139, 144 (individual voir
dire of all proposed venirepersons concerning exposure to
pretrial publicity conducted in the defendants' absence was
a harmless error because the portion during which the
defendants were absent concerned only one topic and

22

experienced defense counsel were present).  In contrast, where the defendant was absent not merely from a small portion of jury selection but from all of it, the courts sitting in habeas review were prompted to assume that the error was not harmless.  See United States v. Gordon, 829 F.2d 119, 128 (D.C. Cir. 1987) (comparing such circumstances with those addressed in Washington, Dioguardi and Chrisco and pointing out that the analysis conducted by the Court of Appeals for the Third Circuit in Alessandrello requires assumption of non-harmless error in a scenario where the non-waiving defendant was excluded from the entirety of his voir dire).

21. Here, Petitioner's amended petition and accompanying brief suggest that Petitioner was excluded from either the entire voir dire process without his consent or from large portions of voir dire, see Docket Entries Nos. 13 and 14, in violation of his Sixth and Fourteenth Amendment rights. Petitioner's traverse, however, quotes an exchange between Petitioner's counsel and trial judge suggesting that Petitioner could have been excluded only from a handful of in camera conferences (which might not have been conducted altogether), see Docket Entry No. 22, without even implicating Petitioner's constitutional rights.  The decision issued by the Law Division during Petitioner's

post-conviction relief proceedings suggested that Petitioner
was excluded from a multitude of side bar and/or _in camera_
conferences and/or other parts of _voir dire_ proceedings
conducted inside the judicial chambers, etc.  _See_ Docket
Entry No. 20-2, at 130-31, and Docket Entry No. 20-3, at 46-
47.[8]  The Court's resort to Respondents' answer and exhibits
for clarification of this vast ambiguity yielded no success:
as noted _supra_, Respondents' exhibits presented a thicket of
1460 pages that did not clarify which parts of _voir dire_
took place outside Petitioner's presence, since Respondents'
answer merely asserted that Petitioner's application should
be denied for lack of constitutional right to pose
peremptory challenges and as a question of state law.  _See_
Docket Entries Nos. 19, 20, 20-1 to 20-16.

22.  In light of the foregoing, it has become apparent to this
Court that no factual and legal determinations as to
Petitioner's first ground could be made without first
establishing, with utmost clarity, the underlying record
(and, if the circumstances so warrant, without conducting an

_____

[8]  While a footnote in the Law Division's opinion indicated
that a certain section of that court's discussion addressed
Petitioner's _voir dire_ challenges, and the section indeed began
with a two-paragraph discussion of the _voir dire_ issue, the
following pages of this very section proceeded to discuss
Petitioner's waiver of his right to testify, which had nothing to
do with his presence during _voir dire_.  _See_ Docket Entry No. 20-
2, at 130-33, and Docket Entry No. 20-3, at 46-49.

evidentiary hearing to supplement that record) as to Petitioner's lack of waiver and/or the particular portions (or the entirety) of voir dire conducted outside Petitioner's presence and/or the nature of questioning of venirepersons conducted, as well as the state court's decisions reached, in Petitioner's absence.

23.  There is no Sixth Amendment right to appointment of counsel in habeas proceedings.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("our cases establish that the right to appointed counsel extends to the first appeal of right, and no further"); Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992), superseded on other grounds by statute, 28 U.S.C. § 2254(d) ("There is no 'automatic' constitutional right to counsel in a federal habeas corpus proceeding").  The Court may nevertheless appoint counsel to a person seeking habeas relief when "the interests of justice so require," pursuant to 18 U.S.C. § 3006A(a)(2)(B).  A prerequisite to appointment of counsel is a finding that Petitioner is indigent.  Here, while Petitioner prepaid his filing fee of $ 5.00, see Docket Entry No. 3, Petitioner's original petition arrived accompanied by Petitioner's affidavit of indigence.  See Docket Entry No. 1-2.  Upon examination of Petitioner's affidavit, the Court is satisfied that Petitioner is

indigent for the purposes of inquiry as to his ability to retain private counsel.

24. Turning to the interests of justice, the Court must first determine whether Petitioner has raised any nonfrivolous claims.  See Reese, 946 F.2d at 263-64.  The Court then looks to the following factors:

> (a) complexity of issues; (b) whether factual investigation is needed; (c) whether issues presented are straightforward and capable of resolution on the record; and (d) whether petitioner is capable of presenting his claims, understanding the issues, and meeting the court's procedural requirements.

Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 628 n.23 (D.N.J. 2008) (citing Reese, 946 F.2d at 263-64).  Here, Petitioner's first ground necessarily presents: (a) a meritorious claim in the event Petitioner was, without an on-the-record waiver, excluded from the *entirety* of his voir dire proceedings; or (b) a potentially meritorious claim in the event Petitioner was, without an on-the-record waiver, excluded from significant portions of voir dire. Petitioner's submissions indicate his lack of knowledge as to what proceeded in his absence (and, consequently, his inability to appreciate the significance of these unknown developments), while Respondents' submissions made thus far proved to be not the source to be relied upon to resolve this ambiguity; worse, these Respondents' submissions offer

26

the Court no assurances as to obtaining a conclusive resolution of this ambiguity through Respondents' future participation in this action.

25. Therefore, pursuant to 18 U.S.C. § 3006A(a)(2)(B), this Court finds that appointment of counsel for Petitioner is in the interest of justice and will appoint such counsel for the limited purpose of representing Petitioner with regard to Petitioner's challenges raised in the first ground of his amended petition, _i.e._, with regard to the issue of his exclusion from all or parts of the _voir dire_ process.

IT IS, therefore, on this ___13th___ day of ___May___, 2011,

ORDERED that, pursuant to 18 U.S.C. § 3006A(a)(2)(B), this Court finds that the appointment of an attorney in the Office of Federal Public Defender for the District of New Jersey for Petitioner is in the interest of justice; and it is further

ORDERED that such appointment is made solely with regard to Petitioner's _voir dire_ challenges raised as the first ground of his amended petition and clarified, as point one, in Petitioner's brief and traverse, _see_ Docket Entries Nos. 13, 14 and 22; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon the Federal Public Defender for the District of New Jersey by certified mail, return receipt requested, and, in addition, by means of electronic delivery; and it is further

27

ORDERED that, within five days of the date of the entry of this Memorandum Opinion and Order, Petitioner's appointed counsel shall file a notice of appearance; and it is further

ORDERED that, within forty-five days from the date of entry of this Memorandum Opinion and Order, Petitioner's counsel and Respondents shall file in this matter their respective:

(a)  statements of facts related to Petitioner's aforesaid first ground;

(b)  exhibits verifying their factual positions;[9]

(c)  memoranda of law in support of their legal conclusions as to validity or invalidity of Petitioner's aforesaid first ground challenges; and

(d)  statements detailing their positions as to whether an evidentiary hearing with regard to Petitioner's aforesaid first ground challenges shall be held in this action;[10]

---

[9]  In the event Respondents' exhibits include the relevant documentary matter, each side may, if it so desires, provide the Court with a list of references to Respondents' exhibits docketed in this matter in lieu of having the relevant record filed anew. However, such list of references shall provide the Court with a clear designation of each document and correspond each such designation to the docket entry made *in this matter* and, where applicable, to a particular page within that docket entry.

[10]  In the event there is no dispute among the parties as to the factual predicate underlying Petitioner's first ground and also as to the need for an evidentiary hearing (or lack thereof), the parties may file a joint statement as to the issue of an evidentiary hearing.  However, in such scenario, Petitioner's counsel shall file a certification verifying Petitioner's consent

and it is further

ORDERED that, within sixty days from the date of entry of this Memorandum Opinion and Order, Respondents shall file their new answer, accompanied by a *thoughtful and carefully drafted* legal brief in support of their answer, supplemental exhibits relevant to their new answer and/or legal brief (if such exhibits are needed) and index of all Respondents' exhibits prepared in accordance with the guidance provided to Respondents in this Memorandum Opinion and Order.[11]  Such superceding answer and accompanying material shall address only the challenges raised in Petitioner's grounds two, three and four.  However, each Petitioner's sub-ground included in the ground four shall be addressed as a *separate and individual ground*; and it is further

ORDERED that, for the purposes of the remainder of this litigation, all challenges to performance of trial counsel shall be deemed governed by the legal standard articulated in the following terms, including the footnoted material:

---

to counsel's filing of a joint statement with Respondents; this certification shall be signed and dated by Petitioner.

[11] Although, at this juncture, Respondents are expected to be well-familiar with the facts and law of the case at bar, the Court finds it warranted to provide Respondents with an ample period of time to prepare their new answer, legal brief, index and exhibits since the Court: (a) is mindful of the time Respondents might have to invest into addressing Petitioner's first ground and the evidentiary hearing issue; and (b) hopes that Respondents will utilize this ample period of time to prepare a carefully drafted new answer, index and memorandum of law duly citing to the legal sources *and* the underlying record.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See id., 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.[12]  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so egregious that they were outside the wide range of professionally competent assistance.  See id.  To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.   As the Supreme Court explained,

> [i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture,

---

[12]   See also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); Thomas v. Varner, 428 F. 3d 491, 499 (3d Cir. 2005) ("To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy").

and some will have had an isolated, trivial
effect. Moreover, a verdict or conclusion only
weakly supported by the record is more likely to
have been affected by errors than one with
overwhelming record support. Taking the unaffected
findings as a given, and taking due account of the
effect of the errors on the remaining findings, a
court making the prejudice inquiry must ask if the
defendant has met the burden of showing that the
decision reached  would reasonably likely have
been different absent the errors.

Strickland, 466 U.S. at 695-96.  The Supreme Court
instructs that a court need not address both components
of an ineffective assistance claim "if the defendant
makes an insufficient showing on one."  Id. at 697.
"If it is easier to dispose of an ineffectiveness claim
on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be
followed."  Id.

and it is further

    ORDERED that, since the Court has provided the parties with

the language of the aforesaid standard, *none of this boilerplate*

*language shall to be reiterated either in Respondents' legal*

*brief accompanying their new answer or in Petitioner's new*

*traverse*, that is, if Petitioner elects to file such new

traverse.  Rather, while addressing those challenges that are

governed by this standard, the parties shall merely state "this

claim is governed by <u>Strickland</u> and its progeny";[13] and it is further

ORDERED that Respondents shall serve their new answer, index and memorandum of law upon Petitioner; and it is further

ORDERED that, within sixty days from the date of being served with Respondents' new answer, index and memorandum of law, Petitioner may, if he so desires, file a new traverse to Respondents' submissions.  Such new traverse, if filed, will be deemed a document wholly superceding Petitioner's original traverse, Docket Entry No. 22.  Petitioner's new traverse, if filed, shall address only the issues raised in Respondents' new answer and memorandum of law, <u>i.e.</u>, Respondents' opposition to Petitioner's grounds two, three and four.[14]  Petitioner shall not construe an opportunity to file a superceding traverse as an invitation to add to or to comment upon, or to re-litigate in any

---

[13]  This warning is particularly pertinent to Respondents' obligation to submit a legal brief together with their new answer.  Granted that Respondents' original answer contained a response to Petitioner's fifteen sub-grounds fit within the mere four pages, one and a half of which were consumed by recital of this well-established standard, the Court will not tolerate seeing the standard repeated fifteen times in Respondents' brief, consuming twenty-plus pages and leaving just a couple sentences for substantive discussion of Petitioner's fifteen sub-grounds.

[14]  Although Petitioner is now familiar with the gist of Respondents' position, the Court finds it warranted to allow Petitioner ample time to prepare his superceding traverse, since this Court is mindful of: (a) Petitioner's <u>pro se</u> status; and (b) the time likely to be invested in preparation for an evidentiary hearing as to Petitioner's first ground in the event this Court finds that holding such hearing is warranted in this action.

other way or fashion, Petitioner's position raised, through appointed counsel, with regard to Petitioner's first ground; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Respondents by means of electronic delivery; and it is finally

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Petitioner, together with a copy of the docket sheet in this action (in order to assist Petitioner in orienting himself as to the docket entries made in this matter). Such service upon Petitioner shall be executed by certified mail, return receipt requested.

**Dickinson R. Debevoise**
**United States District Judge**