<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERMAINE A. WILLIAMS, | Civil Action No. 09-1822 (DRD) |
| Petitioner, | |
| v. | **OPINION** |
| MICHELLE R. RICCI, | |
| Respondents. | |

**APPEARANCES**:

> JERMAINE A. WILLIAMS, #427661/212959C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> *Petitioner Pro Se*

> KEITH ERIC HOFFMAN, ASSISTANT PROSECUTOR
> PASSAIC COUNTY PROSECUTOR
> 401 Grand Street
> Paterson, New Jersey 07505
> *Attorneys for Respondents*

**Debevoise, Senior U.S. District Judge**

Jermaine A. Williams filed an Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Williams challenges a judgment of conviction filed in the Superior Court of New Jersey, Passaic County, on January 4, 2002, imposing a life term, subject to a 30-year period of parole ineligibility, for first-degree felony murder, second-degree reckless manslaughter, second-degree possession of a firearm with the purpose of using it unlawfully, and third-degree unlawful possession of a firearm without a permit. On December 14, 2012, this Court determined that the New Jersey courts' adjudication of Williams's <u>voir dire</u> claim was not contrary to, or an

unreasonable application of Supreme Court precedent, and that he was not entitled to habeas relief on Ground One of the Amended Petition.   The State filed an Answer to the remaining grounds raised in the Amended Petition and Williams filed a Reply.   After carefully reviewing the arguments of the parties and the state court record, this Court will deny habeas relief on the remaining grounds raised in the Petition (Grounds Two, Three, and Four), and decline to issue a certificate of appealability.

## I.   BACKGROUND

### A.   The Crime

The record in the state court contains testimony from which the following facts could have been found.   The shooting of 16-year old Miguel "Danny" Mercado occurred during the afternoon of Sunday, September 26, 1999, in front of a bodega owned by his father.   Earlier in the day, Jermaine Williams ("Black"), Stuart Jones ("Stu"), and Jahkeam Francis ("Jahk") gathered in Newark.   Williams had a silver handgun and said he would rob someone if he had the opportunity to do so because he needed money.   The three men took a taxi to East Orange where they got into a livery cab - a white Lincoln - driven by an unidentified male driver.   Williams was in the rear with Jones, and Francis sat next to the driver.   The men went to Paterson, stopped for a few minutes at home of Francis's aunt, and then proceeded to the intersection of North Fourth Street and Haledon Avenue in Paterson.   The white Lincoln went past the bodega on Haledon Avenue while Danny Mercado and Gregory Brown were talking on the sidewalk in front of the bodega. Danny Mercado was wearing a thick gold chain around his neck.   Williams told the driver to go back to the bodega and to pull over, and the driver complied.   Williams got out of the car.   He grabbed Danny Mercado from behind, held a gun to his neck, and told him to give Williams the

gold chain.   Danny Mercado resisted, the two tussled, and Williams shot Mercado in the abdomen; Williams got back into the cab, with the gun and the gold chain, and the white Lincoln drove off. Mercado died the next day as a result of internal hemorrhaging caused by the gun shot wound in his abdomen.

The driver took the men to the home of Francis's cousin, Althea Cummings, who lived a few blocks away, dropped the men off, and left.   The men went into the home of Althea Cummings, who was there with her daughter and a friend named Rasheem White.   During the course of the evening, Althea Cummings drove Williams, Jones, Francis, and White to a club in Paterson.   They left the club at about 2:30 A.M.   Cummings dropped Williams, Jones and Francis off in Orange and Newark, and she took Rasheem White back to her home in Paterson. Danny Mercado died on September 27, 1999.   Two days after the shooting, Williams and Jones went to New York and Williams sold the gold chain.

The day after the shooting, Rasheem White saw his cousin, Laveeda Brown, who lived four blocks from the bodega.   Laveeda Brown knew the Mercados; she found out about the robbery and the shooting when she went to the bodega on the day of the incident and she saw people mourning.   White told Laveeda that he might know who did the shooting.   She went to the bodega and told Mr. Mercado that she had information about the shooting and a detective called her.

## B.   The Police Investigation

Shortly thereafter, Laveeda Brown met with Sergeant Reyes and Detective Lawrie, Paterson police officers who were investigating the homicide.   On September 29, 1999, she signed a statement indicating that Rasheem White had informed her that he might know who did the

shooting.   At that point, Sergeant Reyes considered Rasheem White to be a suspect.   At about 11:30 P.M. on September 29, 1999, Reyes and Lawrie drove to an area White frequented and they spotted White.   They arrested White on an outstanding warrant issued on an unrelated crime and interrogated him at the police station for over three hours.   White told the police what he had learned about the shooting after Althea Cummings' cousin [Jahkeam Francis] came to her house on September 26, 1999, with two other men.   He denied any involvement in the robbery but after the officers threatened him and smacked him, at 2:45 A.M. he signed a statement[1] prepared by the officers that placed him in the white Lincoln at the time of the incident together with four other men.[2]

The interrogation of Rasheem White led Sergeant Reyes and Detective Lawrie to interview Althea Cummings.   Cummings told them that on September 26, 1999, at around 6:00 P.M. her

---

[1] White's statement signed at 2:45 A.M. on September 30, 1999, was admitted into evidence as S-14.   (ECF Nos. 41-2 at 34; 52-21 at 2-8.)   In the statement, White averred that at about 6 P.M. on September 26, 1999, Jahkeam Francis, who was the cousin of Althea Cummings, arrived at Cummings' house as White was getting out of the tub.   Jahkeam Francis brought Black (later identified as Jermaine Williams) and another guy.   After White got dressed, he left with Jahkeam Francis, Black and the other guy, and they got into a cab - a white Lincoln- with a driver who was waiting outside.   When Black said that he needed some cigarettes, White told him to stop at the store at 4th and Haledon, so the driver made a U-turn and came back to the store.   "That[']s when black got out of the car. Not even five minutes I heard a gun shot, I didn't think nothing of it till I seen him get in the car and told me let[']s get out of here.   That's when the driver pulled off and we headed to the liquor store . . ."   (ECF No. 52-21 at 3.)   White further stated that he knew Danny Mercado and that, although Jahkeam Francis was not wearing a chain when he arrived at Cummings' house, Francis had a gold chain on after they had gone to the store at 4th and Haledon Street.

[2] Rasheem testified for the defense at trial.   He testified that he signed the statement because "they just told me to sign.   I was doing whatever they told me to do eventually."   (ECF No. 41-2 at 36.)

cousin Jahkeam Francis arrived at her home with Black [Williams] and Stu [Jones] as Rasheem White was getting out of the shower.   She allowed Francis to drive Rasheem White to the liquor store in her car, and the two of them returned in about 30 minutes with liquor.   They all stayed at her house until about 9 P.M., and eventually she took them to a club in Paterson.   In the early morning hours, Cummings dropped Stu [Jones] and Black [Williams] off at the projects in Orange after she had dropped Jahkeam Francis off in Newark.   She told the police her cousin's full name and where he used to live with his mother in the projects in Orange, but she did not know the full names of Black [Williams] or Stu [Jones].

The police arrested Stuart Jones on October 15, 1999, at his aunt's house after his photo was in the paper.   Jones gave Sergeant Reyes and Detective Lawrie an initial statement on October 15, 1999.   Although Stuart Jones did not know Black's [Williams] surname, he knew him as Jermaine and he identified Jermaine Williams in a photo lineup.   In his initial statement, Jones said there were five people in the white Lincoln at the time of the incident (Jones, Williams, Francis, the driver, and Rasheem White) because the police told him that Rasheem White had already admitted that he was in the car.[3]   Jones told the police that Black [Williams] got out of the car in front of the bodega, Jones heard a shot, and Black [Williams] jumped back into the car with the gold chain and a gun.

Jahkeam Francis (cousin of Althea Cummings) was hiding out at a girlfriend's house, but a fugitive task force arrested him on March 10, 2000, in Newark.   He gave a statement to Reyes

---

[3] He signed the statement to implicate White because "they told me that [White] already admitted that he was there . . , [s]o I just went with it and just placed him at the scene." (ECF No. 55-3 at 72.)

5

and Lawrie on March 10, 2000.   When they asked him if Rasheem White was involved, he said that White was not in the car at the time of the incident or involved in it.   Like Jones, Francis told the police that he was in the car at the time of the shooting, and that Williams robbed and shot Danny Mercado.   On June 16, 2000, Williams was arrested in York, Pennsylvania.

## C.   The State Court Proceedings

A grand jury returned a 10-count indictment regarding the robbery and death of Danny Mercado against Jermaine Williams aka Black, Rasheem White, Stuart Jones aka Stu, and Jahkeam Francis.   (ECF No. 20-1 at 105-114.)   Shortly before the trial, the prosecutor dismissed the charges against Rasheem White and entered into plea agreements with Stuart Jones and Jahkeam Francis whereby they each agreed to plead guilty to conspiracy to commit robbery and to testify truthfully against Williams in exchange for a 10-year sentence.

Trial began on September 25, 2001.   Jones and Francis testified for the prosecution in accordance with their plea agreements.   Jones and Francis testified that Rasheem White was not involved in the incident; that Jones, Williams, Francis and the driver were in the white Lincoln at the time of the incident; that Williams got out of the car, shot Danny Mercado, and got back in with the gold chain and a gun.   Jahkeam Francis further testified that Jermaine Williams admitted during the evening of September 26, 1999, that he had shot the boy.   Althea Cummings, Laveeda Brown, and Sergeant Reyes also testified for the prosecution.   Rasheem White testified for the defense.   He testified that, although he had initially denied involvement in the incident, after being threatened and smacked, he eventually told the police what they wanted to hear - that he was in the car with the four other men at the time of the shooting of Danny Mercado by Williams.

6

On October 4, 2001, the jury found Williams guilty on all counts.   On January 4, 2002, Superior Court Judge Subryan, the trial judge, imposed a life sentence with over 30 years of parole ineligibility.   Williams appealed and on February 26, 2004, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and remanded with instructions to vacate the concurrent sentence on Count Five and to merge Count Five with Count One.   On September 10, 2004, the New Jersey Supreme Court denied certification.   See State v. Williams, 181 N.J. 544 (2004) (table).

On October 8, 2004, Williams filed a pro se petition for post-conviction relief in the trial court.   The trial court appointed counsel, who filed an amended petition.   Without conducting an evidentiary hearing, Judge Subryan denied post-conviction relief by order entered on October 18, 2006, accompanied by a written opinion.   On September 25, 2008, the Appellate Division affirmed the order denying post-conviction relief.   See State v. Williams, 2008 WL 4345452 (N.J. Super. Ct., App. Div., Sept. 25, 2008).   The New Jersey Supreme Court denied certification on December 12, 2008.   See State v. Williams, 197 N.J. 259 (2008) (table).

**D.   Procedural History of § 2254 Petition**

This Court will not recount the detailed procedural history set forth in its prior Opinion. (ECF No. 47.)   To summarize, the Clerk received the Petition on April 17, 2009.   (ECF No. 1.) On November 24, 2010, Williams filed his all-inclusive Amended Petition and on December 13, 2010, he filed a Brief in Support of the Amended Petition.   (ECF Nos. 13, 14.)   The Amended Petition raises four federal grounds, which are set forth below verbatim:

Point I:   PETITIONER[']S COUNSEL FAILED TO ALLOW PETITIONER TO PARTICIPATE IN THE JURY SELECTIONS.   BY WAIVING PETITIONER'S RIGHT TO BE PRESENT OUTSIDE OF PETITIONER'S PRESENCE AND

7

FAILED TO EXCUSE CERTAIN JURORS VIOLATING 6TH AND 14TH AMENDMENTS OF THE PETITIONER'S CONSTITUTIONAL RIGHTS.

Point II:   THE TRIAL PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT BY ALLOWING THE STATE'S WITNESS TO TESTIFY TO PERJURED TESTIMONY AND FALSE EVIDENCE AND PETITIONER'S COUNSEL WAS INEFFECTIVE . . . FOR FAILING TO OBJECT TO THE ADMISSION OF FALSE TESTIMONY AND FALSE EVIDENCE IN VIOLATION OF PETITIONER[']S 6TH 14TH AMENDMENT[ RIGHTS.]

Point III:   THE PETITIONER/WILLIAMS WAS DENIED HIS RIGHT TO TESTIFY ON HIS OWN BEHALF AT TRIAL BY HIS COUNSEL'S DECISION THAT HE NOT DO SO DENYING HIM OF HIS FUNDAMENTAL RIGHTS UNDER THE UNITED STATES CONSTITUTION[.]

Point IV:   PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL GUARANTEED BY THE UNITED STATES CONSTITUTION'S SIXTH AMENDMENT[.]

(ECF No. 14 at 2.)

This Court ordered the parties to brief Ground One of the Amended Petition before answering the remaining grounds.   On December 14, 2012, this Court determined that Williams was not entitled to habeas relief on Ground One and ordered the parties to brief Grounds Two, Three and Four.   (ECF Nos. 47, 48.)   The State filed an Amended Answer and a supplemental record, and Williams filed a Reply.   (ECF Nos. 56, 57.)

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.   See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).   Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §

2254(a).   Where a state court adjudicated petitioner's federal claim on the merits,[4] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   See Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."   Williams, 529 U.S. at 405-06.   Under the

---

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

9

"'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."   Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).   Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).

## III.   DISCUSSION

### A.   Presenting Perjured Testimony (Ground Two)

"[T]he Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence."   Miller v. Pate, 386 U.S. 1, 7 (1967); see also Napue v. People of State of Illinois, 360 U.S. 264 (1959).   The knowing use of perjured testimony "involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'"   United States v. Bagley, 473 U.S. 667, 680 (1985) (quoting United States v. Agurs, 427 U.S. 97, 104 (1976)).   However, a conviction obtained by the knowing use of perjured testimony must be set aside only if there is a reasonable probability that, absent the perjured testimony, the outcome of the trial would have been different.   Bagley, 473 U.S. at 680 n.9.   Accordingly, to make out a due process violation, one must show that a witness committed

perjury; the government knew or should have known of his perjury; the perjured testimony went uncorrected; and there is a reasonable likelihood that the false testimony affected the verdict.   See Lambert v. Blackwell, 387 F.3d 210, 242 -243 (3d Cir. 2004).

Williams argues that the prosecutor presented the false testimony of Sergeant Reyes. Specifically, Williams asserts that Reyes falsely testified that Rasheem White and Althea Cummings identified his photograph in a photo lineup when they gave statements to Reyes.   The State argues that, regardless of whether or not White and Cummings identified Williams when they gave their statements to police in 1999, these persons testified during the trial that Williams was at Althea Cummings's house on September 26, 1999, and they identified him at trial.

The New Jersey courts rejected the perjured testimony claim on post-conviction relief without conducting an evidentiary hearing on the ground that the allegedly false testimony had no effect on the outcome of the trial because "the State presented overwhelming evidence of defendant's guilt and Reyes' testimony concerning the identifications was not a key element of the State's case."   Williams, 2008 WL 4345452 at *6.   The Appellate Division further found that Williams "did not present sufficient evidence to show that Reyes falsely testified " and that the "statements by Cummings and White may raise issues of credibility, but they do not establish that Reyes' testimony was untruthful." Id. at *7.   This Court is required to presume the correctness of this factual finding, and Williams has failed to rebut it by clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

11

Williams is not entitled to habeas relief under § 2254(d)(2) on the claim that the State presented perjured testimony because he has not shown that the adjudication of the claim was based on an unreasonable determination of the facts, in light of the evidence presented.   See 28 U.S.C. § 2254(d)(2).

Nor has he shown that the New Jersey courts' rejection of the claim was contrary to or an unreasonable application of Supreme Court precedent under § 2254(d)(1).   Specifically, Williams has not shown that, absent the allegedly false testimony by Reyes concerning the photo identifications by Cummings and White, there is a reasonable probability that the jury would have acquitted him.   After all, whether or not Cummings and White identified Williams in a photo lineup when they gave their statements to the police, these witnesses testified that they spent the evening with Williams and they identified him at trial.   Moreover, Jones and Francis testified that they were present in the white Lincoln when Williams got out of the car and robbed and shot Danny Mercado.   Accordingly, Williams, he is not entitled to habeas relief on Ground Two.

B.    **Right to Testify (Ground Three)**

Williams claims that he was denied his right to testify by counsel's decision that he should not testify.   The State argues that he is not entitled to habeas relief on this claim because the record establishes that Williams himself knowingly and voluntarily told the trial judge that he did not want to testify.

Williams raised this ground on post-conviction relief.   The trial court rejected the claim on the ground that the record showed that Williams knowingly and intelligently waived the right to testify.   The Appellate Division affirmed as follows:

12

The [trial] judge noted that at the trial, he had explained to defendant that he had a right to testify if he chose to do so.   The judge told defendant that he could not be forced to testify and the decision was his and his alone.   The judge also told defendant that he could consult with his attorney "but it's entirely up to you whether you want to testify or not."

Although defendant first indicated that he wanted to testify, the court gave defendant an opportunity to discuss the matter with his attorney.   Thereafter, defendant informed the court that there had been a misunderstanding and he would not be testifying.   Defendant stated that it was his decision and no one forced him to make that decision.

Defendant also assured the court that he decided not to testify of his "own free will" and no one had made any threats or promises to cause him to make that decision . . .
Therefore, the record provides no support whatsoever for defendant's contention that his trial counsel failed to adequately advise him concerning his right to testify and prevented him from testifying.

<u>Williams</u>, 2008 WL 4345452 at *7.

The constitutional right to "testify on one's own behalf at a criminal trial," <u>Rock v. Arkansas</u>, 483 U.S. 44, 51 (1987), is personal and the accused, not counsel, has the authority to make the decision to testify.   See <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal").   Moreover, the right to testify "can be waived only by the defendant, not defense counsel." <u>United States v. Leggett</u>, 162 F.3d 237, 245 (3d Cir. 1998); <u>see also</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 241 (1973); <u>United States v. Pennycooke</u>, 65 F.3d 9, 11 (3d Cir. 1995).

Here, the New Jersey courts rejected Williams' denial of the right to testify claim based on the finding that Williams himself knowingly and voluntarily decided not to testify.   This Court is required to presume the correctness of this factual finding, and Williams has failed to rebut it by

clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).   Williams is not entitled to habeas relief on the claim that he was denied his right to testify because he has not shown that the adjudication of the claim was based on an unreasonable determination of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), or that it was contrary to, or an unreasonable application of clearly established Supreme Court precedent, see 28 U.S.C. § 2254(d)(1).

C.   **Ineffective Assistance of Counsel (Ground Four)**

As the trial and appellate courts acknowledged in Petitioner's case, the Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   See Strickland v. Washington, 466 U.S. 668, 686 (1984).   A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   Id. at 687.   First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   Id. at 687-88.   To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."   Id. at 690.   The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]"   Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).   To satisfy the prejudice prong, "a defendant need not show that counsel's

deficient conduct more likely than not altered the outcome in the case."   <u>Strickland</u> at 693.[5]   To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission."   <u>Hinton</u>, 134 S.Ct. at 1083.   "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."   <u>Id.</u> at 1089 (quoting <u>Strickland</u>, 466 U.S. at 695).

In his Amended Petition, Williams maintains that counsel was deficient for preventing him from testifying; counsel was deficient for admitting during his opening statement that Williams was in the white Lincoln at the time of the incident; counsel was deficient in failing to address the misconduct of the police during the interrogation of Rasheem White and to argue that the prosecution of Williams was the fruit of the misconduct and coercion of White; counsel failed to discuss trial strategy with Williams; counsel failed to investigate and call witnesses identified by Williams; counsel failed to move for a mistrial following the testimony of Jennifer Furtado; counsel failed to subpoena the photo albums Gregory Brown reviewed at the police station, the recording of the 911 call, and the notes made by the police; counsel failed to request a jury instruction regarding the jury's consideration of the testimony of a participant in the crime; counsel failed to object to the admission of the false testimony of Reyes; and counsel failed to challenge witnesses with inconsistent statements. Williams raised these ineffective assistance of counsel claims in his petition for post-conviction relief.   The trial judge rejected each ground in a thorough

_____

[5] The reasonable probability standard is less demanding than the preponderance of the evidence standard.   *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

written opinion, primarily because Williams failed to assert or show prejudice.  The Appellate Division affirmed substantially for the reasons explained by the trial judge.

### 1.  Preventing Petitioner from Testifying

Williams claims that counsel was deficient in preventing him from testifying.  As explained above, the New Jersey courts' factual determination that Williams himself decided not to testify undermines this claim.  Moreover, as the Supreme Court explained in Knowles v. Mirzayance, 556 U.S. 111 (2009), counsel cannot be constitutionally deficient in failing to pursue a defense that had almost no chance of success.  Id. at 126-27.  Given the overwhelming evidence of guilt presented at trial, Williams has not shown that counsel was deficient in advising him not to testify that he was innocent.  See Cummings v. Sirmons, 506 F. 3d 1211, 1230 (10th Cir. 2007) (rejecting claim that trial counsel erroneously advised petitioner not to testify because advice was not deficient where "counsel had ample reasons to advise him not to testify at trial" and, in light of strong evidence of guilt, jury could not have reasonably found petitioner's assertions of innocence believable).  In addition, since Williams has not described the nature of the testimony he would have given, he has not shown that there is a reasonable probability that, if he had testified, the outcome of the proceeding would have been different.

### 2.  Admission During Counsel's Opening

Williams claims that counsel was constitutionally deficient when he stated in his opening statement that "Jermaine Williams was a passenger in that white Lincoln.  No doubt about it." (ECF No. 41-1 at 53.)  The trial court rejected this claim in its post-conviction relief opinion on the ground that counsel was not deficient, as his strategy was to show that there was a reasonable doubt that Williams was the person who got out of the car and robbed and shot Mercado.

16

This Court has examined counsel's opening statement.   Although counsel acknowledged that Williams was in the car, counsel argued that the jury should acquit Williams because Jones or Francis - who were in jail at the time they testified and had made a plea agreement with the prosecution to get a lesser sentence in exchange for testifying against Williams - could have been the shooter.   Counsel further argued in the opening that Rasheem White gave a statement to the police in which he said that he was in the white Lincoln at the time of the shooting, and the State indicted White along with Jones, Francis and Williams, yet the prosecutor dismissed the charges against White two weeks before Williams' trial.   Thus, counsel implied that Rasheem White could have been the shooter and, in any event, the police bungled the investigation.

The state courts' determination that counsel's admission was trial strategy is supported by the record and is not contrary to, or an unreasonable application of Strickland and its progeny.

### 3.   Failure to Address Police Misconduct Toward Rasheem White

Williams asserts that counsel failed to address the illegal arrest and police misconduct toward Rasheem White, that Rasheem White's statement to police was coerced, and that Williams' prosecution "was the result of the fruit of illegally obtained evidence."   (ECF No. 14 at 3.) Williams states that White testified "that he was beaten and made to sign a statement that the police had already constructed[, even though] he never witnessed [the] shot."   (ECF No. 14 at 60.) Williams argues that the coerced confession of White "tainted the entire indictment, because it was used by the grand jury," and that "this illegally obtained confession was the fruit of all the other fabricate[d] evidence that was evolved."   Id. Williams contends that counsel "was obviously ineffective, for allowing the state to utilize evidence that had been obtained illegally.   Also for

17

failing to confront state witnesses with the false testimony that was presented." (ECF No. 14 at 41.)

Williams raised this ground on post-conviction relief. The trial judge rejected it summarily on the ground that Williams "has done nothing more than set forth bald assertions." (ECF No. 20-2 at 120.) The Appellate Division's opinion does not discuss the claim. This Court has reviewed the record and notes that defense counsel called Rasheem White as a witness. White testified about giving a statement to the Paterson police on September 29, 1999, at 2:45 in the morning. White testified that the Detective Lawrie and another officer talked to him for about three hours before he signed the statement. When he was asked what he talked about, White testified that "[i]t was basically like threats, you know what I mean, it's a lot of threats given you know." (ECF No. 41-2 at 33.) Counsel for Williams asked White what kind of threats and White answered: "Like what they'd do, how they do it and smack you and everything, you know." Id. Counsel showed White his statement dated September 30, 1999, at 2:45 A.M. White testified that, although he was not in the white Lincoln on the day of the shooting, he signed a statement typed by the police placing him in the car because they "told me to sign [and] I was doing whatever they told me to do eventually." (ECF No. 41-2 at 36.)

In defense counsel's closing statement, he cast doubt on Williams being the person who robbed and shot Danny Mercado. Counsel argued that the prosecution and police conducted an inept and corrupt investigation and that their star witnesses -Jones and Francis - were not believable because they were testifying in exchange for a reduced sentence, either of them could have been the shooter, and Jones had lied to the police when he signed a statement placing Rasheem White

in the white Lincoln.   As to Rasheem White, defense counsel asked why the prosecution did not

call him as a witness and continued:

> What was there to hide?  I mean Rasheem White would have come in and said
> what he did say . . . I've got the entire indictment against me dismissed, I'm as free
> as a bird as far as these charges are concerned . . . Reyes and Lawrie and that entire
> Squad B set up Rasheem White, and there's no other way you can have it because
> Rasheem White gave not one, but two statements within three hours of each other.
> Now I don't know if I'm at liberty or if you're at liberty to believe that these cops
> slapped him around.   I don't know about that, but I can use some other verbs.   He
> said they threatened him, maybe they did.   I can say they coerced him, but certainly
> those two confessions were spoon fed to Rasheem White by Reyes.   Reyes read
> his own arrest report to you as of September 29, 1999.   Subject arrested after he
> confessed to the killing of Miguel Daniel Mercado.   You heard the testimony.   So
> now he's arrested with two confessions and you may say to yourself, this Rasheem
> White what is he some kind of a nut?   He's putting himself at the scene of the
> shoot[ing]; he's telling Reyes who's responsible for the shooting and now we know
> conclusively that he wasn't there.   Can you imagine that?   How are you going to
> resolve that issue?   I ask you respectfully.   What is [the prosecutor] going to say
> to you about that?   He can't say Rasheem White is a liar because he dismissed the
> indictment against him, so evidently he himself believed Rasheem White.   That's
> Reyes' rush to judgment in this case.   Reyes who yesterday could not give me a
> straight answer if it called for a yes or no, I got a paragraph; if it called for a sentence
> I got a litany . . .

(ECF No. 55-7 at 7-8.)

The record conclusively shows that defense counsel did address police misconduct toward

Rasheem White.   Counsel did not address it in the precise way Williams preferred, i.e., arguing

that the prosecution of Williams was the fruit of the arrest and police misconduct toward White.

Although "a police officer who fabricates evidence against a criminal defendant to obtain his

conviction violates the defendant's constitutional right to due process of law," in this case, the

fabricated confession of White was not used to obtain Williams' conviction.   Halsey v. Pfeiffer,

570 F.3d 273, 279 (3d Cir. 2014).   Whether or not Rasheem White was the fifth person in the

white Lincoln, the police had already learned from Althea Cummings that Williams, Jones and

Francis arrived at her home at about 6:00 P.M. on the day of the shooting.   And whether or not Rasheem White was in the white Lincoln, Jones and Francis both told the police at the time they were arrested that Williams got out of the white Lincoln and robbed and shot Danny Mercado. So defense counsel used the police misconduct in the only way he could:   since the police had coerced and framed one person, it is possible that they had also framed Williams.   Counsel was not deficient in failing to address the police misconduct toward White and, in any event, Williams has not shown that there is a reasonable probability that, but for counsel's failure to raise the arguments preferred by Williams, the outcome of the case would have been different.

### 4.   Failure to Discuss Trial Strategy

Williams argues that counsel was constitutionally deficient because he failed to discuss trial strategy with Williams and failed to "defend the case from Petitioner's point of view."   (ECF No. 14 at 43.)   A defendant has "'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'"   Florida v. Nixon, 543 U.S. 175, 187 (2004) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)).   "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has - and must have - full authority to manage the conduct of the trial."   Taylor v. Illinois, 484 U.S. 400, 417-18 (1988).   Counsel's duty "does not require counsel to obtain the defendant's consent to every tactical decision."   Id. (citation and internal quotation marks omitted).

In this case, the trial court rejected this claim in its post-conviction relief opinion on the ground that counsel is not required to consult a defendant regarding strategy and because Williams failed to establish prejudice.   As to prejudice, the trial court found that "the main strategy for the

defense was to discredit the State's witnesses, and convince the jury that the Petitioner was not the individual who shot the victim.   Since the Petitioner has not explained how additional consultations would have changed this trial strategy, and ultimately the outcome of the trial, the Petitioner has failed to establish a prima facie case of ineffective assistance of counsel."   (ECF No. 20-2 at 124-25.)

Williams has not shown that the New Jersey courts' determination that counsel was not ineffective in failing to consult with him regarding trial strategy was contrary to, or an unreasonable application of Strickland or other Supreme Court precedent.   In addition, the state courts' determination that he failed to establish prejudice because he did not show how counsel's strategy would have changed with consultations or how such consultations would have affected the outcome of the case, was consistent with Strickland.   As the Supreme Court explained, "[w]hen § 2254(d) applies the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Harrington v. Richter, 562 U.S. 86, __, 131 S.Ct. 770, 788 (2011).   This Court finds that the New Jersey courts' adjudication of this ground was not contrary to, or an unreasonable application of Strickland or other Supreme Court precedent.   See Leggett, 162 F.3d at 247 ("[T]here is no constitutional right to be represented by a lawyer who agrees with the defendant's trial strategy.   Mere disagreement between defendant and counsel with regard to strategic decisions does not create a situation severe enough to compel a district court to investigate whether the defendant's rights are being impinged[.]") (citing United States v. Taylor, 128 F.3d 1105, 1108 (7th Cir. 1997).)

### 5.   Failure to Investigate and Call Witnesses

Williams argues that counsel was deficient in failing to interview and call Williams'

brother as a defense witness.   Williams' brother filed an affidavit in the post-conviction relief

proceeding in which he averred that Williams was in Michigan visiting their sister at the time of

the shooting.   The New Jersey courts rejected this claim in part because Williams' brother was in

court during the trial and Williams failed to raise an alibi defense until four and one-half years

after trial.   In any event, Williams has not shown prejudice by the failure to call his brother, since

the brother did not aver in his affidavit that he was with Williams in Michigan at the time of the

shooting or otherwise show that he had personal knowledge of Williams' whereabouts.

### 6.   Failure to Move for a Mistrial

Williams asserts that trial counsel was deficient in failing to move for a mistrial based on

the testimony of Jennifer Furtado.   The trial court rejected this claim on post-conviction relief

because Williams had unsuccessfully argued on appeal that the court failed to correct or take

curative measures regarding the testimony of Furtado.   Williams is not entitled to habeas relief on

this ground because "counsel cannot be deemed ineffective for failing to raise a meritless claim."

Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012))

(quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

### 7.   Failure to Subpoena Evidence

Williams argues that counsel was deficient in failing to subpoena the recording of the 911

call, the notes taken by the police during the investigation, and the photo albums shown to Gregory

Brown, the person who was speaking with Danny Mercado at the time of the shooting.   Williams

is not entitled to habeas relief on these grounds because, as the New Jersey courts found, he has not shown that counsel's failure to subpoena these items caused prejudice.

### 8.   Failure to Request a Jury Instruction

Williams asserts that counsel was deficient in failing to request an instruction concerning the jury's weighing of the testimony of Jones and Francis.   The trial court found in its opinion on post-conviction relief that counsel was not deficient in failing to request the instruction because the Appellate Division ruled on direct appeal that the trial court did not err in failing to give such an instruction.   Specifically, the Appellate Division found that Jones and Francis "were extensively and pertinently cross-examined as to their testimonial motive, and counsel effectively argued that issue to the jury on his summation.   The jury was made fully aware of the credibility problems inherent in accomplice testimony."   (ECF No. 20-2 at 84.)   Williams is not entitled to habeas relief on this claim because "counsel cannot be deemed ineffective for failing to raise a meritless claim."   Ross v. District Attorney of the County of Allegheny, 672 F.3d at 211 n.9.

### 9.   Failure to Object to the False Testimony of Reyes

Williams asserts that counsel was constitutionally deficient in failing to object to Reyes' allegedly false testimony concerning the photo identifications of Williams by White and Cummings.   As explained above, the Appellate Division rejected Williams claim that the trial violated due process by presenting perjured testimony.   The appellate court found that Williams did not show that Reyes' testimony was false and that, even if the testimony was false, the admission of this testimony was not a due process violation because the evidence of guilt was overwhelming and Reyes' testimony concerning the identification was not a key element of the

State's case.   Again, Williams is not entitled to habeas relief on this claim because counsel cannot be deemed ineffective for failing to raise a meritless claim.

### 10.   Failure to Challenge Witnesses with Inconsistent Statements

Williams argues that defense counsel was ineffective in failing to cross-examine Francis and another witness on minor inconsistencies between their testimony and statements to police. For example, Williams states that the statement says Francis heard Mercado "hollering" and saw him fall to the ground, but his testimony was that Williams got out of the car, Francis heard a shot, and Williams got back into the car with a gold chain and the gun.   Again, as the state courts found, Williams has not shown prejudice under the Strickland standard.

To summarize, the trial court and Appellate Division used the clearly established Supreme Court precedent to consider Petitioner's ineffective assistance of counsel claims, and nothing before this Court indicates that the application of the *Strickland* prongs to those claims was unreasonable or even incorrect.   In addition, Petitioner has not shown that the findings of fact with respect to counsel's performance were unreasonable in light of the evidence presented in the post-conviction relief proceeding.   Moreover, the record in this case demonstrates that the evidence of Williams's guilt, which included the testimony of his two friends who were in the white Lincoln when Williams robbed and shot Danny Mercado, was overwhelming.   Accordingly, the New Jersey courts' conclusion that Williams failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different, but for counsel's deficient performance, was not contrary to, or an unreasonable application of *Strickland's* prejudice prong.   Williams is not entitled to habeas relief pursuant to § 2254(d)(1) or (d)(2) on his ineffective assistance of counsel claims.

24

D.     **Certificate of Appealability**

Soto has not made a substantial showing of the denial of a constitutional right.   Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).   *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   CONCLUSION

This Court dismisses the Amended Petition with prejudice and denies a certificate of appealability.


     s/Dickinson R. Debevoise                      
     DICKINSON R. DEBEVOISE
     U.S.S.D.J.

Dated:   January 22, 2015